# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF DELAWARE, *ex rel.*, TERESA KELLY, | CIVIL ACTION NO. 1:16-CV-347 |
| | (Chief Judge Conner) |
| Plaintiffs | |
| v. | |
| SELECT SPECIALTY HOSPITAL-WILMINGTON, INC., *et al.*, | |
| Defendants | |

## **MEMORANDUM**

*Qui tam* plaintiff Teresa Kelly ("Kelly") commenced this action against defendants Select Specialty Hospital-Wilmington, Inc. (the "hospital"), Select Specialty Hospitals, Inc., Select Employment Services, Inc., Select Medical Corporation ("Select Medical") (collectively, the "Select defendants"), and Crystal Cheek ("Cheek") pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and the Delaware False Claims and Reporting Act, DEL. CODE. ANN. tit. 6 §§ 1201-11. (See Doc. 16). Before the court is a motion (Doc. 17) to dismiss filed by the Select defendants pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons that follow, the court will grant in part and deny in part the motion.

## I. **Factual Background & Procedural History**

Kelly is the chief nursing officer at the hospital, which provides long-term acute care. (Doc. 16 ¶¶ 6, 27). She has held this position since September 2014. (Id. ¶ 6) As chief nursing officer, Kelly "oversees [the] day-to-day operations" of

---

[1] The Select defendants also filed a request (Doc. 22) for oral argument on their motion (Doc. 17) to dismiss. The court finds oral argument unnecessary to the disposition of the instant motion. We therefore deny the Select defendants' request.

hospital staff, clerks, and technicians.  (Id.)  She also serves on the hospital's medical executive committee.  (Id.)

The Select defendants receive payment from Medicare, Medicaid, and the Federal Employee Health Benefits Program (collectively, "state and federal healthcare programs") as reimbursement for certain medical services performed.  (See id. ¶¶ 23, 30).  Payment from these state and federal healthcare programs is conditioned upon certification (or recertification) from a physician, nurse practitioner, or clinical nurse specialist (collectively, "medical practitioners") that the medical service rendered was necessary.  (Id. ¶¶ 17, 23, 25, 30-31).  The hospital is required to ensure that all medical practitioners are credentialed.  (Id. ¶ 35).

Cheek was the hospital's health information management manager from 2008 until January 2016.  (Id. ¶¶ 38, 62).  As manager, Cheek was responsible for ensuring that the hospital's medical records complied with federal and state regulations.  (Id. ¶ 39).  After she reviewed these records, Cheek submitted them to Select Medical's corporate office for "coding and billing to the [f]ederal and [s]tate [h]ealthcare [p]rograms."  (Id. ¶ 45; see also id. ¶ 35).  Cheek was also responsible for ensuring that medical practitioners responsible for treating patients were "properly credentialed."  (Id. ¶ 40).

Cheek took a medical leave of absence in March 2015, and Kathleen Dawiedczyk ("Dawiedczyk") temporarily assumed Cheek's responsibilities.  (Id. ¶ 42).  That same month, Dawiedczyk discovered that Cheek kept cut-outs of medical practitioners' signatures underneath her desk calendar.  (Id. ¶ 43; see also Doc. 16-1).  Dawiedczyk purportedly showed these cut-outs to Kelly.  (Doc. 16 ¶ 43).

2

She also showed Kelly a previously discharged patient's chart where Cheek had used the cut-outs to forge the signatures of medical practitioners for services charged to federal and state healthcare programs. (Id.) Kelly allegedly reported what she saw to the hospital's chief executive officer, Sharon Rosetti ("Rosetti"). (Id. ¶ 47).

Cheek returned to work in April 2015 and allegedly "continued to forge [medical practitioners'] signatures on unsigned medical records." (Id. ¶ 51). In September 2015, the hospital hired Donna Gares ("Gares") as its new chief executive officer. (Id. ¶ 53). Kelly told Gares about Cheek's conduct shortly after Gares was hired. (Id.) Two months later, health information management assistant Katie Desmond allegedly showed Kelly additional medical records "in which Cheek had forged medical practitioner signatures." (Id. ¶ 54). Kelly immediately approached Gares about Cheek's conduct. (Id. ¶ 55). Kelly discovered five more patient charts purportedly containing forged signatures in January 2016, and again reported Cheek's conduct to Gares. (Id. ¶¶ 57-58). After this third meeting, Gares "initiated an investigation" into Cheek's actions. (Id.) The hospital fired Cheek on January 26, 2018. (Id. ¶ 62). Kelly contends that Gares's investigation also revealed that Cheek "had not been examining the credentials of medical practitioners." (Id. ¶ 63).

In February 2016, Kelly spoke with Robert Breighner ("Breighner"), Select Medical's Vice President of Compliance and Audit Services. (Id. ¶ 66). Kelly expressed to Breighner her frustration regarding the manner in which the Select defendants handled "Cheek's forging of medical practitioner signatures." (Id.)

3

Breighner responded that Cheek's conduct was "not a reportable offense to any government entity" because it was a "he said, she said situation." (Id.) Breighner further indicated that "he 'was comfortable with the charts at risk.'" (Id.)

Kelly contends that the Select defendants violated the FCA and the Delaware False Claims and Reporting Act by submitting claims for reimbursement to federal and state healthcare programs premised on medical records that contained forged signatures. (Id. ¶¶ 72-77). She avers that the federal and state healthcare programs would not have remitted payment to the Select defendants had they known the signatures were forged. (Id. ¶¶ 78-79). Kelly also contends that the Select defendants violated the FCA and the Delaware False Claims and Reporting Act by failing to ensure that medical practitioners were credentialed. (Id. ¶¶ 83-84).

Kelly commenced the instant action on May 12, 2016, (Doc. 2), and filed an amended complaint (Doc. 16) on May 17, 2017. She asserts four claims: presenting or causing presentment of a false claim under 31 U.S.C. § 3729(a)(1)(A) (Count I); knowingly presenting a false or fraudulent record under 31 U.S.C. § 3729(a)(1)(B) (Count II); knowingly making a "reverse false claim" under 31 U.S.C. § 3729(a)(1)(G) (Count III); and violation of the Delaware False Claims and Reporting Act, DEL. CODE. ANN. tit. 6 §§ 1201-11 (Count IV). (Id.) The Select defendants move to dismiss the amended complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). (Doc. 17). The motion is fully briefed and ripe for disposition.[2]

---

[2] The United States declined to intervene in this action, (see Doc. 8), but filed a statement of interest (Doc. 19) regarding the Select defendants' motion (Doc. 17) to dismiss.

4

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions

5

may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

FCA claims are subject to the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b).  United States *ex rel.* Petras v. Simparel, Inc., 857 F.3d 497, 502 (3d Cir. 2017).  Rule 9(b) mandates that a party alleging fraud or mistake "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).  Its purpose is to notify defendants "of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of . . . fraudulent behavior."  Smith v. Carolina Med. Ctr., 274 F. Supp. 3d 300, 308 (E.D. Pa. 2017) (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)).

At the motion to dismiss stage, an FCA claimant must allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."  Foglia v. Renal Ventures Mgmt., LLC, 754 F.3d 153, 157-58 (3d Cir. 2014) (quoting United States *ex rel.* Grubbs v. Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009)).  They should allege "'the who, what, when, where[,] and how of the events'" constituting the fraud.  United States *ex rel.* Customs Fraud Investigations, LLC v. Victaulic Co., 839 F.3d 242, 272

6

(3d Cir. 2016) (quoting United States *ex rel.* Moore & Co., P.A. v. Majestic Blue Fisheries, LLC, 812 F.3d 294, 307 (3d Cir. 2016)).  "Describing a mere opportunity for fraud will not suffice," but a "'representative sample' of the alleged fraudulent conduct, specifying the time, place, and content of the acts and the identity of the actors" is not required.  Foglia, 754 F.3d at 155-58 (internal citations omitted).

### III. Discussion

The Select defendants assert preliminarily that Kelly fails to satisfy Rule 9(b)'s heightened pleading standard.  They argue alternatively that Kelly fails to satisfy the FCA's materiality and knowledge requirements, fails to allege a reverse false claim, and fails to set forth a legally cognizable state law claim.

#### A. FCA Claims

Section 3730 of Title 31 of the United States Code allows private citizens, referred to as relators, to enforce the false claims provision, 31 U.S.C. § 3729, of the FCA on behalf of the United States.  See 31 U.S.C. § 3730(b); United States *ex rel.* Wilkins v. United Health Grp., Inc., 659 F.3d 295, 305 (3d Cir. 2011).  The false claims provision of the FCA imposes liability on any person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;"
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . . or
>
> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government[.]

7

31 U.S.C. § 3729(a)(1). There are "two categories of false claims" under which a relator may bring an FCA action—factually false claims and legally false claims. Wilkins, 659 F.3d at 305 (citing United States *ex rel.* Conner v. Salina Reg'l Health Ctr., Inc., 543 F.3d 1211, 1217 (10th Cir. 2008)); see also United States *ex rel.* Moore & Co., P.A. v. Majestic Blue Fisheries, LLC, 196 F. Supp. 3d 436, 443 (D. Del. 2016). Factually false claims arise when "the claimant misrepresents what goods or services that it provided to the [g]overnment." Wilkins, 659 F.3d at 305. Legally false claims occur when "the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for [g]overnment payment." Id.

Claims that are legally false are based on a "'false certification' theory of liability." Id. (internal citation omitted). A false certification can either be express or implied. Id. Express false certification occurs when an entity "falsely certify[ies] that it is in compliance with regulations which are prerequisites to [g]overnment payment in connection with the claim for payment of federal funds." Id. (internal citation omitted). Liability under the implied false certification theory is "more expansive." Id. It attaches when two conditions are satisfied: (1) the claim requests payment and "makes specific representations about the goods or services provided," and (2) "the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." Universal Health Servs., Inc. v. United States *ex rel.* Escobar, 579 U.S. __, 136 S. Ct. 1989, 2001 (2016).

8

Kelly does not allege any facts that suggest Cheek caused the hospital to submit factually false claims. For example, she does not contend that the hospital, at any point, sought reimbursement for medical services it did not provide. See United States v. Exec. Health Res., Inc., 196 F. Supp. 3d 477, 499 (E.D. Pa. 2016). Kelly instead avers that the hospital submitted legally false claims premised on two fraudulent schemes: *first*, that Cheek routinely forged medical practitioners' signatures on medical records; and *second*, that Cheek failed to examine the credentials of medical practitioners at the hospital. Because Kelly avers that the hospital submitted legally false claims, she must also allege that the misrepresentations were "material to the [g]overnment's payment decision." United States *ex rel.* Greenfield v. Medco Health Sols., Inc., 880 F.3d 89, 94 (3d Cir. 2018) (quoting Escobar, 136 S. Ct. at 1996). Kelly does not expressly situate her claims under a particular false certification theory.

As a threshold matter, Kelly's allegations related to the purported credentialing scheme, seemingly pled under an implied false certification theory, fail to satisfy the heightened pleading requirements of Rule 9(b).[3] Kelly does not allege that any of the medical practitioners lacked credentials to treat patients. She contends only that "physicians, physician assistants, and nurse practitioners who . . . treated patents at [the hospital] *may* have lacked the proper credentials to treat patients because Cheek never examined their credentials." (Doc. 16 ¶ 82) (emphasis added).

---

[3] We note that the Select defendants also categorize the alleged false credentialing scheme as an implied false certification. (See Doc. 18 at 9-10).

9

This factual deficiency is compounded by Kelly's reliance on the phrase "upon information and belief" in regards to her contention that Cheek failed to examine medical practitioners' credentials in the first instance. (See id. ¶¶ 63, 80). Pleadings based on "information and belief" are insufficient to satisfy the Rule 9(b) particularity requirement. See, e.g., Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295, 313-14 (D.N.J. 2005); Toner v. Allstate Ins. Co., 821 F. Supp. 276, 285 (D. Del. 1993); Kimmel v. Peterson, 565 F. Supp. 475, 482 (E.D. Pa. 1983); see also 2A JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 9.03[g] (3d ed. 2015). Such allegations satisfy Rule 9(b) "only if the pleading sets forth specific facts upon which the belief is reasonably based." Rapid Models & Prototypes, Inc. v. Innovated Sols., 71 F. Supp. 3d 492, 504 n.7 (D.N.J. 2014); see also Kimmel, 565 F. Supp. at 482. Kelly offers no such foundation for her allegations. Accordingly, Kelly's FCA claims cannot be premised on Cheek's purported failure to examine the credentials of medical practitioners at the hospital.

Conversely, Kelly's factual averments related to the forged signature scheme, ostensibly pled under an express false certification theory, (see Doc. 16 ¶¶ 72-73), are pled with sufficient particularity to satisfy Rule 9(b). Kelly personally observed the cut-outs of medical practitioners' signatures that Cheek kept underneath her desk calendar at the hospital. (See id. ¶¶ 43, 57; see also Doc. 16-1). Kelly directly examined several patient records that contained the forged signatures of medical practitioners. (See Doc. 16 ¶¶ 43, 54, 57-58). Further, Kelly avers that Cheek, as the hospital's health information management manager, was responsible for submitting medical records to Select Medical's corporate office for coding and billing to state

10

and federal healthcare programs. (See id. 16 ¶¶ 39, 45). These statements describe more than a "mere opportunity for fraud" and "establish a 'strong inference'" that false claims were submitted." See Foglia, 754 F.3d at 158 (internal quotation marks and citations omitted).

Kelly asserts three violations of the FCA based on Cheek's use of forged signatures on patient records. We address these claims *seriatim*.

### 1. *Count I: Presenting or Causing Presentment of a False Claim*

Kelly asseverates that the Select defendants violated Section 3729(a)(1)(A) of the FCA. (Doc. 16 ¶ 86). To establish a *prima facie* violation of Section 3729(a)(1)(A), a plaintiff must allege three things: "(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." Wilkins, 659 F.3d at 304-05 (quoting United States *ex rel.* Schmidt v. Zimmer, Inc., 386 F.3d 235, 242 (3d Cir. 2004)); see also Exec. Health Res., 196 F. Supp. 3d at 492-93 (quoting same). The FCA defines "knowingly" as having "actual knowledge of the information" or else acting in "deliberate ignorance" or "reckless disregard" of the "truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A); see also Escobar, 136 S. Ct. at 1996. A plaintiff need not allege that a defendant acted with "specific intent to defraud." Id. at § 3729(b)(1)(B). Further, knowledge may be alleged generally. Foglia, 754 F.3d 153, 155 (3d Cir. 2014); Exec. Health Res., 196 F. Supp. 3d at 503. When the claims are legally false, a plaintiff must also allege that the claimant's "misrepresentation" was "material to the [g]overnment's payment

decision." United States *ex rel.* Petratos v. Genentech Inc., 855 F.3d 481, 489 (3d Cir. 2017) (quoting Escobar, 136 S. Ct. at 1996).

### i. **Materiality**

The FCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). A misrepresentation is material if it "goes 'to the very essence of the bargain.'" Petratos, 855 F.3d at 489 (quoting Escobar, 136 S. Ct. at 2003 n.5). The fact that payment is conditioned on compliance with a statute, regulation, or contractual requirement, or that the government *could* decline payment based on noncompliance, does not automatically establish materiality. Id. (citing Escobar, 136 S. Ct. at 2003). A misrepresentation will not be material if the alleged failure to comply is either "minor or insubstantial." Id. (citing Escobar, 136 S. Ct. at 2003). But a misrepresentation *will* likely be considered material if the government routinely refuses to remit payment for claims that fail to comply with a particular statute, regulation, or contract. See id. (quoting Escobar, 136 S. Ct. at 2003).

As stated *supra*, Kelly has alleged that Cheek routinely forged medical practitioners' signatures on medical records and that Cheek submitted these records to Select Medical's corporate office for coding and billing to federal healthcare programs. Kelly further contends that the government "would not have remitted payment to [the Select defendants] if it had known" that the hospital was submitting claims with forged signatures. (See Doc. 16 ¶ 78). In support of this contention, Kelly cites to a number of statutory and regulatory provisions stating that reimbursement from federal healthcare programs is conditional upon the

12

certification (and sometimes recertification) by medical practitioners that services provided were "necessary." (See, e.g., id. ¶¶ 17, 21-26 (citing, *inter alia*, 42 U.S.C. §§ 1395f, 1395n, 1395y; 5 U.S.C. § 8902; 42 C.F.R. §§ 424.5, 424.10, 424.11, 424.13)). These requirements, while not dispositive, are "nevertheless . . . 'relevant' evidence in favor of materiality." United States *ex rel.* Emanuele v. Medicor Assocs., 242 F. Supp. 3d 409, 431 (W.D. Pa. 2017) (quoting Escobar, 136 S. Ct. at 2002-03).

Additionally, nothing in the amended complaint suggests that Cheek's forgery was immaterial. For example, there is no indication that the government would have paid the Select defendants regardless of the forged signatures or that the government knew of the forged signatures but nonetheless continued to remit payment. Compare Smith, 274 F. Supp. 3d at 315, and Emanuele, 242 F. Supp. 3d at 431, with Petratos, 855 F.3d at 490. Finally, we do not find the alleged noncompliance to be minor or insubstantial. Cf. Petratos, 855 F.3d at 490. Rather, we find that claims for payment supported by valid signatures go to the "essence of the bargain" between healthcare providers and the federal healthcare programs that reimburse them. A valid signature from a medical practitioner is what signals to federal healthcare programs that the services rendered were necessary in the first instance. Thus, we conclude that Kelly has adequately alleged that the hospital submitted false claims to the government and that the misrepresentation, in the

form of forged signatures, was material to the government's payment of those false claims.[4]

### ii. **Knowledge**

We further find that Kelly adequately alleges knowledge. The Third Circuit Court of Appeals has not yet addressed whether the individual responsible for the actual submission of the claim must have knowledge of the claim's falsity in order to satisfy the FCA's scienter requirement. However, the Third Circuit has expressly stated that it was Congress's intention that the FCA "not punish honest mistakes or incorrect claims submitted through mere negligence." United States *ex rel.* Hefner v. Hackensack Univ. Med. Ctr., 495 F. 3d 103, 109 (3d Cir. 2007) (internal quotation marks and citations omitted). Absent controlling authority, we find the Fifth Circuit Court of Appeals' analysis in United States *ex rel.* Rigsby v. State Farm Fire & Casualty Co., 794 F.3d 457 (5th Cir. 2015), to be persuasive. Therein, the court held that the FCA's scienter requirement is satisfied even if the individual who submits the claim does not have knowledge of its falsity. See id. at 479 (citing Grand Union Co. v. United States, 696 F.2d 888, 889-90 (11th Cir. 1983); United States *ex rel.* Harrison v. Westinghouse Savannah River Co., 352 F.3d 908, 920 n.12 (4th Cir. 2003)).

Kelly does not allege any facts to suggest Cheek's use of forged signatures was an honest mistake or a negligent act. *Per contra*, Kelly describes a pattern of

---

[4] The Select defendants posit that Kelly fails to allege materiality because "[m]any of the regulatory standards cited by [Kelly] are wholly inapplicable to long-term acute care hospitals like [Select Specialty Hospital-Wilmington, Inc.]." (Doc. 18 at 14). The Select defendants identify only two such regulations, (see Doc. 18 at 14 & n.3), neither of which inform the court's decision *sub judice*.

conduct suggesting that any action taken by Cheek was purposeful and that Cheek had actual knowledge that she was submitting false claims for payment. (See Doc. 16 ¶ 43, 54; see also Doc. 16-1). For its part, the hospital took no immediate action after it learned that Cheek had forged signatures on medical records. (See, e.g., Doc. 16 ¶¶ 47, 54-55, 57, 66). We will deny the Select defendants' motion to dismiss Count I.[5]

### 2. *Count II: Presenting a False or Fraudulent Record*

Kelly avers that the Select defendants violated Section 3729(a)(1)(B) of the FCA. (Doc. 16 ¶ 88). To claim a violation of Section 3729(a)(1)(B), a plaintiff must allege that a defendant "knowingly made, used, or caused to be made or used a 'false record or statement material to a false or fraudulent claim.'" Exec. Health Res., 196 F. Supp. 3d at 493 (quoting 31 U.S.C. § 3729(a)(1)(B)). For the reasons set forth *supra*, we find that Kelly adequately alleges that Cheek knowingly caused the hospital to submit false claims to the government premised on false records, insofar as they contained forged signatures, and that these claims were material to the government's payment decision. Accordingly, we will deny the Select defendants' motion to dismiss Count II.

### 3. *Count III: Reverse False Claim*

Kelly lastly contends that the Select defendants violated Section 3729(a)(1)(G) of the FCA. (Doc. 16 ¶ 90). Causes of action brought under this section are referred

---

[5] We will not construe Kelly's failure to respond to the Select defendants' knowledge argument as waiver thereof. As outlined above, the Select defendants advance an interpretation of the FCA's knowledge requirement, (see Doc. 18 at 16-17), that we decline to adopt.

15

to as "reverse false claims." Victaulic, 839 F.3d at 246-47. The phrase stems from the fact that this section "targets a defendant's 'fraudulent effort to reduce a liability owed to the government rather than to get a false or fraudulent claim allowed or paid.'" United States ex rel. Petras v. Simparel, Inc., No. 13-2415, 2015 WL 7313861, at *4 (D.N.J. Nov. 20, 2015) (quoting United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 513 n.12 (3d Cir. 2007)), aff'd, Simparel, 857 F.3d 497.

Kelly has abandoned this claim by failing to respond to the arguments made by the Select defendants. See Levy-Tatum v. Navient Sols., Inc., 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016). Assuming *arguendo* that Kelly had not abandoned this claim, she does not allege a single fact to suggest that the hospital had an obligation to pay the government or that the hospital did anything to avoid or decrease said obligation. Cf. Victaulic, 839 F.3d at 254-55. Thus, Kelly fails to meet the pleading requirements of Rule 12(b)(6), let alone the heightened pleading requirements of Rule 9(b). We will grant the Select defendants' motion to dismiss Count III.

**B.      State Law Claim**

Kelly avers that the Select defendants violated the Delaware False Claims and Reporting Act, DEL. CODE. ANN. tit. 6 §§ 1201-11, by submitting claims for payment to the Delaware Medicaid Program premised on the same credentialing and forged signature schemes already described. The Select defendants argue that Kelly's state law claim should be dismissed because Kelly does not aver that she served a copy of her amended complaint (Doc. 16) upon the Delaware Department of Justice as required by DEL. CODE. ANN. tit. 6 § 1203(b)(2). (See Doc. 18 at 19). We agree. We further note that the Delaware False Claims and Reporting Act permits a

private party to "conduct the action" only *after* the Delaware Department of Justice is served with the complaint and "notif[ies] the court that it declines to take over." DEL. CODE. ANN. tit. 6 § 1203(b)(2), (b)(4)(b).  To date, the Delaware Department of Justice has not been served and thus has not declined to intervene.  Accordingly, we must grant the Select defendants' motion to dismiss Count IV.  <u>See</u> <u>United States</u> *ex rel.* <u>Rahimi v. Zydus Pharms. (USA), Inc.</u>, No. 15-6536, 2017 WL 1503986, at *13-14 (D.N.J. Apr. 26, 2017); <u>United States</u> *ex rel.* <u>Simpson v. Bayer Corp.</u>, No. 05-3895, 2014 WL 1418923, at *11 (D.N.J. Apr. 11, 2014).  Because Kelly's state law claim is premature rather than legally flawed, it will be dismissed without prejudice. <u>See</u> <u>Bayer Corp.</u>, 2014 WL 1418923, at *11.

## IV. <u>Conclusion</u>

The court will grant in part and deny in part the Select defendants' motion (Doc. 17) to dismiss.  An appropriate order shall issue.

      /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    March 30, 2018